<u>**AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT**</u>

I, Special Agent Joseph Shapiro, having been sworn, state:

**INTRODUCTION AND AGENT BACKGROUND**

1.　　I am a Special Agent employed by the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I am currently assigned to the Organized Crime Drug Enforcement Task Force ("OCDETF") Strike Force at HSI Boston. Prior to being assigned as a Special Agent with HSI Boston, I was assigned as a Special Agent with HSI Newark, New Jersey, from in or around March 2019 until in or around November 2023. My last assignment with HSI Newark was in the Violent Crime and Gang Group conducting investigations into local and international violent criminal organizations. Prior to being employed as a Special Agent with HSI, I was employed as a Special Agent with the United States Secret Service ("USSS") from in or around July 2016 until in or around March 2019. I also previously served in the United States Coast Guard ("USCG") from 2006 to 2014, serving as a Maritime Enforcement Specialist trained to enforce federal laws pertaining to migrant and drug interdiction. I have training and experience in conducting criminal investigations for violations of federal and state laws including, but not limited to, alien smuggling, document/benefit fraud, narcotics smuggling, child exploitation, weapons trafficking, complex financial crimes, and organized criminal activity.

2.　　All dates, time and amounts set forth in this affidavit are approximate. Because this affidavit is being submitted for the limited purpose of securing the requested criminal complaint, I have not included every fact known to me concerning this investigation.

**I.　　PURPOSE OF AFFIDAVIT**

3.　　I make this affidavit in support of an application for criminal complaint charging ISIAH MEDINA (dob: xx/xx/1999) and RODDERITH PERALTA (xx/xx/1999) with conspiracy

1

to commit kidnapping, in violation of 18 U.S.C. § 1201(c), in relation to the kidnapping of an individual I will refer to as VICTIM-1 in Andover, MA on or about May 5, 2024.  MEDINA and PERALTA are both known members of the Lawrence Chapter of the Trinitarios.  *See United States v. Paula-Cabral, et. al.*, Docket No. 25-10058-NMG, ECF# 10-1.

4.      In short, MEDINA, PERALTA and co-conspirators abducted, seized and confined VICTIM-1 for approximately three days, and coordinated the kidnapping and detention over cellular phones, which are a means, facility, or instrumentality of interstate or foreign commerce. The facts set forth in this affidavit are derived from reports from the Massachusetts State Police, Andover Police Department and Lowell Police Department, and a further investigation by Massachusetts State Police and HSI.

## II.    PROBABLE CAUSE

### A.    REPORT OF A KIDNAPPING

5.      On May 5, 2024, at approximately 8:18 PM, Andover Police Department were dispatched to 30 Shattuck Road in Andover, MA following a 911 caller reporting to have seen someone screaming for help before being pushed into the back seat of a Jeep that then fled the area. Upon arrival, law enforcement interviewed the reporting party who stated that they heard someone screaming "Help" and "Somebody help me", when the reporting party looked outside, they saw a light skinned male being forced into a dark colored Jeep SUV by a light skinned male wearing a dark colored jacket or shirt with the letters "DEA" on the back and a tan colored baseball hat. Multiple witnesses to this incident, including the 911 caller, were later interviewed by Andover Police who corroborated the observations of the 911 caller on the recording.

6.      Investigators canvassed the area where the incident reportedly occurred and found a shoe, a sock, and a key ring with a key and fob, which can be described as a small, programmable

device that uses radio frequency identification (RFID) and symmetric encryption to control access to physical space.

7.    Days later, investigators learned from VICTIM-1's girlfriend and VICTIM-1's mother that VICTIM-1 was missing and believed to be kidnapped. According to the girlfriend, VICTIM-1 was communicating with her through his cellular phone. Additionally, the girlfriend stated she was contacted by various blocked phone numbers concerning VICTIM-1.

8.    On May 8, 2024, at 11:50 PM, Lowell Police contacted Andover Police and reported that VICTIM-1 had been located at a CVS on Bridge Street in Lowell that evening. VICTIM-1 was then transported to the hospital.  Lowell Police reported receiving the following information from VICTIM-1, as memorialized in a Lowell Police Report:

> *[VICTIM-1] stated to me that he needed to use a phone to call his mother [.] because he had been kidnapped and held hostage for the past three or four days. He continued that he has been trying to call his mother to come get him here (CVS) because that was the last place he told her that he was out. He was able to use a phone from a person on Lakeview AVE to call his mother before he walked to CVS[. VICTIM-1] continued to explain to me that he was taken several days ago by a group of guys wearing "FBI" jackets and that they "arrested" him in front of his house in N. Andover. When asked if anyone called the police or if he already made a report he stated that he was not sure and that he did not want to report the incident because "they" know where his mom lives and is not sure if "they" are still watching him. [VICTIM-1] stated to me that after being held in a basement for three days he was released by his captors in the area of Hildreth ST and Eustis AVE but was unsure time wise how long ago it was. He then picked a direction and started walking.*

9.    At approximately 1:00 AM on May 9, 2024, Andover Police arrived at the hospital and spoke with [VICTIM-1]. The interview was memorialized in an Andover Police report, as follows:

> *[VICTIM-1] stated that he arrived home and was walking towards his apartment when he was approached by "white old man with glasses". This male was wearing an FBI jacket and told [VICTIM-1] that he was under arrest. [VICTIM-1] then saw other males (at least 5 males total) wearing masks approach him. He then knew that this was not an actual arrest. He ran and threw his keys. [VICTIM-1]*

*reported that he was handcuffed, and pepper sprayed. They forced him into the back of a Jeep SUV, possibly a Wagoneer and took him directly to a location in Haverhill near storage containers. He also noted the location of 15 Independence. [VICTIM-1] stated that while on the highway he broke out the rear window of the Jeep by kicking it. In Haverhill, he was brought to a location near storage containers. He was able to briefly run away. The injury to his thumb and knee were from falling. He was then brought to unknown location(s) in Lowell. He was in a basement for the past few days. [VICTIM-1] described one of the males as being a "big guy" with "dreads" and a little beard.[1] He has "never seen these guys in my life".[2]*

*[VICTIM-1] stated that while being held, he was blindfolded and every time he tried to take it off, he'd get "smacked". [VICTIM-1] was given food and Percocet. He was given sandals at some point. They males threatened to syringe him with a "hot shot". They took his two phones. He gave them his phone's passcode. [VICTIM-1] stated that they texted his girlfriend to go to his apartment. [VICTIM-1] believes the males were planning to also kidnap her. [VICTIM-1] did not know why he was kidnapped. At some point he was zip-tied. [VICTIM-1] reported that the males told him they put a GPS on his vehicle. The males repeatedly asked him about his uncle, [identifying him by name]. [VICTIM-1]'s uncle owns a store in Lawrence. They were also asking [VICTIM-1] about his mother. The males stated that no one was going to pay for him and was no longer of any use. They ultimately decided to let him go. He was blindfolded and put into the back of a vehicle. [VICTIM-1] also mentioned there being bags on his hands with zip-ties. He was then driven for a short period of time and then let out of the vehicle. The blindfold was removed, and the males placed a jacket over his head. At some point prior [VICTIM-1] was given the sandals to wear. [VICTIM-1] walked and was able to make contact with someone at a residence who gave him something to cut off the zip-ties. [VICTIM-1] stated that he threw the items on the ground. Officer Greenhalgh contacted a Lowell officer who checked the area where [VICTIM-1] reported making contact with this unknown person. No items were located in the roadway. [VICTIM-1] believed the males had broken into his apartment because they had his girlfriend's sweatshirt and her old phone.*

10.    On May 9, 2024, investigators went to the apartment of VICTIM-1 to photograph the door for a pending search warrant and discovered that the apartment had been broken into.

---

[1] This is consistent with the physical description of PERALTA.

[2] Investigators believe that VICTIM-1 provided false information concerning his knowledge of those who kidnapped him. Investigators know that PERALTA, MEDINA, and the other suspected Trinitarios involved in the incident are well known to VICTIM-1.

Andover Police obtained a search warrant for VICTIM-1's apartment at 30 Shattuck Road, Apartment 2406 in Andover, MA. Investigators immediately noted that the apartment appeared to have been ransacked, consistent with a robbery and kidnapping.

### B.    COOPERATING WITNESS INFORMATION

11.    In September 2024, and January 2025, CW-18[3] told investigators that a person known to CW-18 as "Nino", and who CW-18 later identified as VICTIM-1was kidnapped in May 2024.  CW-18 spoke with various individuals involved in the kidnapping. CW-18 described VICTIM-1 as a Trinitario associate and large-scale drug trafficker who makes a lot of money selling drugs, particularly selling drug in Maine. CW-18 knew VICTIM-1 to be associated with the Trinitarios but is not himself a member of the Trinitarios. CW-18 stated that VICTIM-1 would pay Trinitarios members for protection and things of that nature. CW-18 stated that the Trinitarios knew of VICTIM-1's drug distribution activities and believed VICTIM-1 to be in possession of a large quantity of drugs or money in his residence, which prompted the kidnapping and robbery. CW-18 stated that VICTIM-1 sells large quantities of drugs in Maine, and that VICTIM-1 could make approximately $50,000 every two or three days. CW-18 provided the following information:

> a.  CW-18 stated that Rodderith PERALTA a/k/a "Mago" had met CW-18 in person shortly after the kidnapping and following the release of VICTIM-1. While together, PERALTA stated that PERALTA and MEDINA had kidnapped VICTIM-1. CW-18 learned from PERALTA that they had pepper

---

[3] I am omitting the name and identity of CW-18 in order to preserve the safety of CW-18.  CW-18 has a criminal record that includes convictions for reckless driving, firearm possession, discharging a firearm, and assault and battery. CW-18 currently faces federal charges. CW-18 provided information concerning a large number of topics that I believe to be accurate and credible, based on corroboration from a variety of sources.  CW-18 has entered into a plea agreement and cooperation agreement with the government and agreed to testify. CW-18 has pleaded guilty to federal charges related to the Trinitarios enterprise.  CW-18 has also testified under oath concerning CW-18's knowledge of the Trinitarios and their commission of various crimes and racketeering. CW-18 has been promised funds for relocation in order to ensure the safety of CW-18. Based on the corroboration of CW-18's information by physical evidence, digital evidence, and information provided by other sources during the course of the investigation, I believe CW-18's information to be reliable and credible.

sprayed VICTIM-1 and that MEDINA was wearing a DEA raid jacket during the incident. PERALTA elaborated that they had broken into VICTIM-1's house and stolen jewelry and other high valued items. PERALTA reported to CW-18 that they sold the items for approximately $30,000. PERALTA believed that MEDINA had "shorted" PERALTA from the kidnapping (i.e. not provided a fair share of the proceeds of the kidnapping). PERALTA then attempted to enlist CW-18 to assist PERALTA in robbing MEDINA. MEDINA was known to be drug dealer himself and to potentially be in possession of additional drugs or proceeds that PERALTA and CW-18 could then share.

b.  CW-18 also spoke with MEDINA concerning the kidnapping, shortly after speaking with PERALTA. CW-18 learned from MEDINA directly that MEDINA was involved in the robbery and kidnapping and provided the same details as PERALTA. MEDINA further elaborated that MEDINA gave VICTIM-1 a Percocet while tied up because VICTIM-1 became sick. During this conversation, MEDINA attempted to enlist CW-18 in an effort to rob another drug dealer known to both CW-18 and MEDINA.

c.  CW-18 also spoke with VICTIM-1 after he was released from the kidnapping. VICTIM-1 confirmed the details of being robbed and kidnapped by PERALTA and MEDINA. VICTIM-1 also asked CW-18 to assist VICTIM-1in robbing PERALTA and MEDINA and potentially kidnapping MEDINA in retaliation for the kidnapping. VICTIM-1 offered to pay CW-18 $20,000 to assist with the robbery and/or kidnapping of PERALTA and MEDINA.

d.  From these conversation, CW-18 learned that the kidnappers had firearms during the incident. CW-18 stated that CW-18 learned MEDINA and PERALTA kept VICTIM-1in a house.

e.  CW-18 stated that MEDINA in particular wanted to commit the kidnapping because VICTIM-1 was interfering with ongoing Trinitario drug distribution activities in Maine. The kidnappers, in addition to taking VICTIM-1's money and drugs and jewelry, were also attempting to take his source of supply and his drug customers.

f.  CW-18 also stated that CW-18 learned that the kidnappers had made calls to various family members and associates of VICTIM-1 trying to seek a ransom for him. CW-18 stated that VICTIM-1's uncle came to the Trinitarios projects and asked the Trinitarios to release VICTIM-1. CW-18 also described MEDINA as the individual who had inside information concerning VICTIM-1's drug distribution activities.

**C.      SEARCH OF MEDINA'S CELLULAR DEVICE**

12.      On April 8, 2025, Troopers with the Massachusetts State Police arrested MEDINA

for a variety of offenses, and a cellular device was seized during that incident. Shortly after

MEDINA's arrest, at the direction of investigators and in order to preserve the data on the phone, the phone was seized from his personal property and transferred to the custody of investigators.

13.     On April 11, 2025, a search warrant issued authorizing the search of the device seized during the arrest of MEDINA granted. Investigators reviewed the contents of the cellular phone and identified extensive evidence of the kidnapping of VICTIM-1. MEDINA's cellular phone was associated with a phone number ending in 2862.  The following information is derived from my review of data found within the cellular phone.

### i.   PHOTOS AND VIDEOS

14.     Investigators located multiple photographs and videos depicting VICTIM-1 with his hands handcuffed with black handcuffs and a winter hat pulled down to cover his face. VICTIM-1 does not appear to be willing participant and appears to be under distress, consistent with having been forcibly kidnapped. These photographs and videos were taken during the window during which VICTIM-1 was held captive.

15.     In MEDINA's cellular phone, investigators located a video file entitled "cplAX+EMxmja9xP80gNVjFUJaw1yxM8.mp4", that, according to the metadata, was created on May 9, 2024, at 2:31:26 AM UTC (or May 8, 2024 at 10:31:26 PM EDT).  In this specific video at least two individuals can be seen putting their hands on VICTIM-1. At one point in the video, the winter hat is pulled away from the face of VICTIM-1. Investigators noted a unique tattoo on the hand of the individual along the edge of the hand, which appears be a script font starting the letter "S". A still image from the video is below, and the hand tattoo is highlighted within a red box:



16.    Investigators obtained booking photographs of PERALTA from the Essex County Sheriff's Department from his most recent in 2024.  One such photograph depicted PERALTA's hand tattoos, which include letters in script along the edge of his hand, starting with the letter "S". This script tattoo along the edge of PERALTA's hand matches the tattoos of the hand depicted in the video of the kidnapping obtained from MEDINA's phone. That image follows:



**TATTOO**
**4/16/25  15:28**

17.     Investigators located a video in MEDINA's cellular phone bearing the filename "cplAUy0ZLFS9KyrbGkKHscBhn4jLCA4.mp4" that, according to the metadata, was created on May 8, 2024, at 7:42:15 PM UTC (or May 8, 2024, at 3:42:15 PM EDT).  In the video, VICTIM-1 can be seen seated, handcuffed with his face covered by the winter hat. Investigators also believe that within this photograph depicts an opened container partially filled with a yellow substance appearing to be urine, highlighted within the red box. That photograph follows:



18.    It should be noted that in the above photograph filename "cplAUy0ZLFS9KyrbGkKHscBhn4jLCA4.mp4", VICTIM-1 is not wearing sandals. As stated in the Andover Police Department report, VICTIM-1 stated that he was given a pair of sandals at some point.

19.    Investigators located another video in MEDINA's cellular phone bearing filename "cplARo0DuqulY9SBq+zXieGWX0GLk_B.mp4" that, according to the metadata, was created on May 7, 2024, at 4:19:33 PM UTC (or May 7, 2024, at 12:19:33 PM EDT). The photograph corroborates VICTIM-1's statement to police regarding being provided with sandals. Specifically, the photograph depicts VICTIM-1 sitting, still handcuffed with a winter hat pulled down to cover his face, but not covering his mouth to allow him to smoke. That photograph follows:



### ii. CONVERSATIONS

20.    Investigators discovered multiple conversations pertaining to the kidnapping between MEDINA and other co-conspirators. During review of MEDINA's cellular phone, a phone number ending in 2923 saved as "El Loco" was located. Investigators believe the phone number ending in 2923 to belong to PERALTA. This belief is based upon analysis of existing data obtained throughout the investigation, including data from other cellular phones and social media

account data. During the timeframe of the kidnapping in May 2024, there were at least 33 text communications and 3 calls between MEDINA's cellular phone and PERALTA using the 2923 phone number.

21.     Three of the text messages exchange between the MEDINA Phone and the 2923 Phone Number were sent on May 6, 2024, from MEDINA to PERALTA saying in Spanish and roughly translated "Damn bro", "You're a problem", "We gotta move it". Investigators believe that, given the timing of the messages, that this is in reference to the commission of the kidnapping. A screenshot of the of the conversation can be seen below:



22.     Investigators found a phone number ending in 3253 saved 6as "Chikito Problema" during analysis of the MEDINA Phone. Investigators believe the user of the phone number ending in 3253 to be HENRY MARTE. This belief is based upon analysis of existing data obtained throughout the investigation, including data from other cellular phones and social media account data, and through subscriber records obtained by T-Mobile. During the timeframe of the kidnapping, there was at least 67 text communications between the MEDINA Phone and MARTE

utilizing the 3253 phone number.  Of note, MARTE was killed in a July 2024 shooting in Lawrence, MA.

23.    During the course of the communication, MEDINA stated to MARTE "Let get the keys that I left there", "In yo car bro". MARTE responds "Donde manito", which translates to "Where, brother?" to which MEDINA responds, "In the end middle". MARTE responds in Spanish, roughly translating to "It's here from the Jeep" and sends a photograph of a Jeep key fob, as seen below:



24.    As stated above in the Andover Police Department report, VICTIM-1 reported that he was forced into a Jeep SUV during the kidnapping. VICTIM-1 mentioned to investigators that he broke a window in the Jeep and managed to temporarily escape. The 911 caller also identified the victim being pushed into a Jeep.

25.    This use of a vehicle is corroborated in a text message with a number ending 5083 that is not saved in MEDINA's cellular phone. In the text message, the 5083 number informs MEDINA that "Ced" is furious about the "v", referring to the vehicle, which investigators believe

to the be the Jeep. The 5083 number further emphasizes that the "Ced" is furious about the "window" and that "niggas" were "late."



26.    In later communication, MEDINA texts the 5083 number about coming to "viejos spot" "to sit with him" while MEDINA goes to "open" a door. Investigators believe this communication is in reference to MEDINA needing someone to stay with VICTIM-1 while MEDINA attempts to gain access to VICTIM-1's apartment. The text can be seen below:



27.    The conversation continues where MEDINA asks the 5083 number about VICTIM-1 defecating himself and also instructs the user of the 5083 number to wait in the room with VICTIM-1. As referenced in earlier photograph above and in the below conversation, investigators believe that VICTIM-1 was not given access to a restroom.



28.    MEDINA continues to instruct the 5083 number on how to interact with VICTIM-1, specifically directing the user of the 5083 number not to speak to VICTIM-1.



29.     MEDINA instructs the user of the 5083 number to open the door and to tell an individual named "Mel" to pull up, presumably to where VICTIM-1 is being held.



30.     Investigators found an additional conversation between MEDINA and a phone number ending in 8504. Beginning after the above screenshot where MEDINA instructed the 5083 number to send "Mel", MEDINA then texts the 8504 number about obstructing the door to leave it open. Investigators believe this is in reference to the conspirators propping open the door located

into the building of 30 Shattuck Road, where VICTIM-1's apartment was located. As referenced above, prior to a search warrant being conducted by investigators the apartment was broken into and burglarized. The screenshot can be seen below:



### D.    CELL SITE LOCATION INFORMATION

31.    Based on the above information, investigators obtained multiple search warrants for historical Cell Site Location Information (CSLI) related to the timeframe of the May 2024 kidnapping. Among the CSLI search warrants obtained were for the phone number ending in 2862 associated with MEDINA's cellular phone seized during his arrest, and the phone number ending in 2923 believed to be used by PERALTA.  Based on my training and experience I know that review of historical CSLI can assist in determining the general whereabouts of a cellular device, and thereby the user of the cellular device, at a particular known date and time.  Preliminary review of the CSLI showed the following:

18

i.     **MEDINA's Cellular Phone**

32.     MEDINA made an outgoing call on May 5, 2024 at 21:26:57 UTC or 5:26 PM EDT. The tower connected to complete the outgoing call was 168 River Road, Andover, MA, which is located approximately 900 feet from 30 Shattuck Road. MEDINA made at least eight other connections to the tower located at 168 River Road in Andover in the form of incoming and outgoing phone calls and connected to no other tower from 21:26:57 UTC until May 6, 2024, at 00:56:28 UTC (or May 5, 2024, at 8:56 PM EDT).  As stated above, the Andover Police Department responded to the report of a kidnapping at 30 Shattuck Road on May 5, 2024, at 8:18 PM EDT (or May 6, 00:18 UTC).

33.     On May 6, 2024, at 00:56:28 UTC (or May 5, 2024, at 8:56:28 PM EDT) MEDINA made an outgoing phone call to a number ending in 0442. The address of the cell tower utilized for that phone call was 160 River Road, Tewksbury, MA. This is approximately 3.8 miles from the previous cell tower that was used. That call occurred approximately 38 minutes after the Andover Police Department responded to the reported kidnapping.

34.     On May 9, 2024, at 03:20:35 UTC (or May 8, 2024, at 11:20 PM EDT), MEDINA made an outgoing phone call. The cell tower utilized for that phone call was 145 Post Office Square, Lowell, MA. This call took place approximately 30 minutes prior to when the Lowell Police Department contacted the Andover Police Department, to report that VICTIM-1 had been located at a CVS on Bridge Street in Lowell that evening. The tower utilized for that phone call is approximately 560 meters from the location where VICTIM-1 was found by Lowell Police.

35.     This preliminary review of the cell site location information for the number ending in 2862 associated with MEDINA's cellular phone seized during his arrest was in the vicinity of the kidnapping prior to the report and was seemingly traveling away from the area shortly after.

Furthermore, the preliminary review showed that the number ending in 2862 was in the vicinity where VICTIM-1 was released at roughly the time when VICTIM-1 was released.

### ii. PERALTA's Cellular Phone

36. On May 5, 2024, at 20:42:28 UTC (or May 5, 2024 at 4:42 PM EDT), PERALTA had an incoming call utilizing a cell tower located 168 River Road, Andover, MA 01810. Two additional outgoing calls were made by PERALTA's cellular phone that connected to the 168 River Road tower at 21:08:55 and 23:56:31 UTC on May 5, 2024 (5:08 PM EDT and 7:56 PM EDT). There were no other towers that the PERALTA phone connected to during that timeframe. As noted above, 168 River Road, Andover, MA, is the same tower location referenced above and is approximately 900 feet from 30 Shattuck Road.

37. On May 6, 2024, at 01:52:20 UTC (or May 5, 2025, at 9:52 PM EDT), PERALTA made an outgoing call utilizing a cell tower located at 10 East Street, Tewksbury, MA 01876.

38. This preliminary review of the cell site location information for the number ending in 2923 believed to be used by PERALTA was in the vicinity of the kidnapping prior to the report and was seemingly traveling away from the area shortly after.

20

## III.    CONCLUSION

39.    Based on the foregoing, there is probable cause to believe that ISIAH MEDINA and RODDERITH PERALTA, and others, conspired to kidnap VICTIM-1 and utilized a means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the offense, in violation of 18 U.S.C. § 1201(c).


Attested to under the penalties of perjury by telephone in accordance with Federal Rule of Criminal Procedure 4.1 on June _____**23**_____, 2025.


/s/ Joseph Shapiro

_____
Special Agent Joseph Shapiro
Homeland Security Investigations

Attested to by telephone in accordance with Federal Rule of Criminal Procedure 4.1 on June _____**23**_____, 2025.



_____
Hon. M. Page Kelley
United States Magistrate Judge

21